UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Colleen Marie Ashton,

    Plaintiff,

v.

Menards Inc., Justin Marsters,

    Defendants.

Case No. 23-CV-03090 (JMB/TNL)

**ORDER**

---

Plaintiff Colleen Marie Ashton, self-represented.

Paul Joseph Hammell, Menard, Inc., Eau Claire, WI, for Defendants Menards Inc. and Justin Marsters.

---

This matter is before the Court on Defendants Menards Inc.'s (Menards) and Justin Marsters's (together, the Defendants) motion to dismiss or, in the alternative, stay this action and compel Plaintiff Colleen Marie Ashton to arbitrate her claims against them for harassment and wrongful discharge on the basis of her age and sex and in retaliation for whistleblowing. (Doc. No. 9.) For the reasons explained below, the Court stays this action and orders the parties to arbitrate the claims.

## BACKGROUND

Menards hired Ashton in September 2014. (Doc. No. 21 [hereinafter, "DeLapp Aff."] ¶ 4.) Angela DeLapp works for Menards in the role of Human Resource Coordinator. (*Id.* ¶ 1.) Part of DeLapp's role involves conducting orientation for new applicants. (*Id.* ¶ 2.) DeLapp had a set orientation process at the time Ashton was hired,

1

which involved giving new applicants the following three documents: (1) the "Employee/Employer Agreement"; (2) a "General Orientation Guide for New Minnesota Team Members"; and (3) a "Team Member Acknowledgment of Receipt," in which the applicant acknowledges receipt of the employee handbook called "Grow with Menards Team Member Information Booklet." (*Id.* ¶¶ 5–9.) As part of DeLapp's set process, she reviewed these documents with every applicant, explained each document, asked applicants if they had any questions, gave applicants as much time as they wanted to review the documents, and then asked applicants to sign the documents before signing them herself. (*Id.* ¶¶ 5, 9.) DeLapp completed this process with Ashton when Ashton was hired by Menards. (*Id.* ¶¶ 4, 9.) In her sworn affidavit, DeLapp states that each of these three documents "was signed by Colleen Ashton and I on September 25, 2014." (*Id.* ¶ 9; *see also id.* ¶ 6, Exs. A, B, C.)

The Employee/Employer Agreement contains an arbitration provision, which provides as follows:

> I agree that all problems, claims and disputes experienced related to my employment area shall first be resolved as outlined in the Team Member Relations section of the "Grow With Menards Team Member Information Booklet" which I have received. If I am unable to resolve the dispute by these means for any reason, I agree to submit to final and binding arbitration. **Arbitration shall be the sole and exclusive forum and remedy for all covered disputes of either Menard, INC or me.** Unless Menard and I agree otherwise, any arbitration proceedings will take place in the county of my Menard's employment where the dispute arose. Problems, claims or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. §§ 1981–1988: Age Discrimination in Employment Act of 1967; Older Workers' Benefit Protection Act ("OWPBA"); Fair Labor

2

> Standards Act: Title VII of the Civil Rights Act of 1964; Title I of the Civil Rights Act of 1991; Americans with Disabilities Act; Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"); Family Medical Leave Act; and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims and any and all causes of action arising under state or common law.
>
> These claims shall be resolved by binding arbitration with the American Arbitration Association . . . under its current version of the National Rules for the Resolution of Employment Disputes.

(*Id.* at Ex. A ¶ 6 (emphasis in original).) Further, the Employee/Employer Agreement states, in in all capital letters: "THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY BOTH MENARD, INC AND ME." (*Id.* at Ex. A.)

In October 2023, Ashton filed a Complaint alleging that Defendants harassed and wrongfully discharged her on the basis of her age and sex and in retaliation for certain whistleblowing activity. (*See* Doc. No. 1.) More specifically, Ashton alleges that she experienced various forms of harassment from her colleagues in retaliation for her reporting to management her belief that they were stealing inventory and falsifying inventory counts to cover up a larger scheme. (*See id.*) She alleges that Marsters, a General Manager at Menards, ultimately terminated her employment in response to her filing these reports and to "cover up for the racket going on within the store" and "make up for missing financial loss from stolen goods." (*Id.* ¶¶ 1, 13.) Upon receipt of the Complaint, Menards made a written demand that Ashton voluntarily submit the dispute to arbitration, to which Ashton did not respond. (Doc. No. 10-3 ¶¶ 3–4, Ex. B.)

3

## DISCUSSION

Defendants now move to stay the action and compel arbitration[1] pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. (Doc. No. 10.) Because the Employee/Employer Agreement contains a valid agreement to arbitrate and because the claims raised in the Complaint fall within the scope of the arbitration agreement, the Court grants Defendants' motion to stay the action and compel arbitration.[2]

The FAA allows parties to use arbitration, instead of lawsuits, to resolve their disputes. *See* 9 U.S.C. § 2. The FAA promotes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That said, "a court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). If both are true,

---

[1] At the hearing on this motion, Defendants withdrew the portion of their motion requesting dismissal because the Supreme Court recently held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding" and "the court does not have discretion to dismiss the suit." *Smith v. Spizzirri*, 601 U.S. 472, 475–76, 478 (2024). Thus, the Court only considers whether to stay the case and compel arbitration.

[2] Importantly, Ashton makes no argument that the Court is the proper forum for litigating her claims against Marsters, and because Ashton alleges that Marsters acted as an agent of Menards, *see Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356–57 (Minn. 2003) (concluding that agents of a defendant can compel arbitration against a signatory to an arbitration agreement), the Court considers the defendants together in its analysis.

4

"[a] court must grant a motion to compel arbitration . . . ." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet*, 42 F.4th at 870.

The Court analyzes Defendants' motion under Federal Rule of Civil Procedure 56 because it is considering matters presented by the parties that go beyond the pleadings and because the parties had constructive notice that the Court intended to consider those matters. *See City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880–82 (8th Cir. 2017) (noting that a motion to compel arbitration "is properly analyzed under either Rule 12(b)(6) or Rule 56" and should not be construed under Rule 12(b)(3) or Rule 12(b)(1)); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Angel v. Williams*, 12 F.3d 786, 788–89 (8th Cir. 1993) (noting that Rule 12 "does not require the court give affirmative notice to the parties of its intent to consider matters outside the complaint" and that "constructive notice of the court's intention" to consider matters outside of the complaint is enough).

Under Rule 56, courts will grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts view the evidence and draw all justifiable inferences in favor of the non-moving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). However, the non-moving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for

5

trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

### A. Validity of the Arbitration Clause

Ashton argues that "she does NOT remember" if she signed the Employee/Employer Agreement and that the signature appearing on that agreement "does not entirely match her signature." (Doc. No. 17 at 2–3 (emphasis in original).) Neither argument can invalidate the arbitration agreement.

First, Ashton's argument that she does not remember signing the Employee/Employer Agreement is unavailing. A person's failure to recollect signing a document is not evidence that withstands summary judgment in the face of evidence that they did, in fact, sign the document in question. *See Shamrock Sod & Landscaping Inc. v. Sec. State Bank of Fergus Falls*, No. A18-1980, 2019 WL 4256375, at *7 (Minn. App. Sept. 9, 2019);[3] *see also Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982) ("[I]n the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different."); *Battle v. Prudential*

---

[3] The validity of an arbitration agreement is determined by state contract law. *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007). Because the agreement provides that any contemplated arbitration would occur in the county of Ashton's Menards employment (i.e., in Minnesota), and because Defendants appear to argue that Minnesota law applies (*see* Doc. No. 10 at 6–7), the Court will refer to Minnesota contract law.

*Ins. Co. of Am.*, 973 F. Supp. 861, 867 (D. Minn. 1997) (finding arbitration agreement valid and noting that, in the absence of fraud or duress, "a party . . . signs a contract at its own peril" and "[f]ailing to read or understand the language of a contract serves as no defense under the law").

Second, although Ashton asserts that the signature is not an exact match, such assertions, without more, do not create a genuine dispute of fact in the face of DeLapp's sworn statement that both she and Ashton signed the Employee/Employer Agreement. (DeLapp Aff. ¶ 6.) Importantly, Ashton does not directly deny signing the Employee/Employer Agreement, does not deny that she had an adequate opportunity to review the agreement before signing, and does not contest the fact that the Employee/Employer Agreement contains an explicit agreement to arbitrate future disputes. Given DeLapp's sworn statement and even when viewed in the light most favorable to Ashton, *Ludwig*, 54 F.3d at 470, no rational trier of fact could find that the agreement to arbitrate is invalid.[4]  *Matsushita*, 475 U.S. at 587; *Krenik*, 47 F.3d at 957.

---

[4] To the extent that Ashton's statements that she needed to work because she was not receiving unemployment benefits at the time (*see* Doc. No. 25) could be construed as a challenge to the validity of the Employee/Employer Agreement on the basis that she was under duress when she signed it, the Court remains unconvinced. There is no evidence in the record that Menards coerced Ashton into signing the Employee/Employer Agreement by physical force or unlawful threats. *See Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn. 1985) ("That an employee is motivated by economic stress to enter into an employment contract with an employer . . . does not render the employee's consent to the contract . . . ineffective. Duress is available as a defense to a contract only when [the] agreement is coerced by physical force or unlawful threats.") Further, Ashton offers an additional argument: the arbitration provision was contained in the "Grow With Menards Team Member Information Booklet," which Ashton "does not remember receiving." (Doc. No. 17 at 2–3.) This argument mischaracterizes the record. The evidence presented to the Court shows that the arbitration provision relied on by Menards was contained in the

### B. Scope of the Arbitration Clause

Menards argues that the scope of the arbitration provision covers Ashton's claims for harassment, wrongful discharge on the basis of age and sex, and wrongful discharge in retaliation for whistleblowing. (Doc. No. 10 at 7–9.) Ashton does not dispute this. Courts must address questions of arbitrability "with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24–25. Here, all of the claims specified in Ashton's Complaint are related to her employment with Menards, and Ashton agreed to submit "disputes experienced related to [her] employment area" to "final and binding arbitration." (*See* DeLapp Aff. at Ex. A ¶ 6.) Likewise, Ashton agreed that "[a]rbitration shall be the sole and exclusive forum and remedy for all covered disputes." (*Id.*) Here, the record could not lead a rational trier of fact to find that the claims fall outside of the arbitration provision. *Matsushita*, 475 U.S. at 587.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants Menards Inc.'s and Justin Marsters's motion to compel arbitration and dismiss the proceedings (Doc. No. 9) was WITHDRAWN;

---

Employee/Employer Agreement and not in an employee handbook. There is no dispute of fact that Ashton received the Employee/Employer Agreement during her orientation and had an adequate opportunity to review it.

2. Defendants alternative motion to stay the proceedings and compel arbitration (Doc. No. 9) is GRANTED;

3. Defendants must file a letter with the Court on or before December 16, 2024, confirming that the parties have commenced the arbitration consistent with the Employee/Employer Agreement; and

4. The parties must notify the Court upon completion of arbitration of Ashton's claims.

Dated: September 19, 2024                                      /s/ *Jeffrey M. Bryan*
                                                              Judge Jeffrey M. Bryan
                                                              United States District Court